Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner as follows:
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. At all relevant times, the parties were subject to and bound by the North Carolina Workers Compensation Act.
2. The employee-employer relationship existed between plaintiff and defendant on the date of plaintiffs alleged accident.
3. The carrier on the risk is the Insurance Company of the State of Pennsylvania.
4. The alleged date of injury is November 20, 1998.
5. Plaintiffs average weekly wage at the time of alleged injury was $337.07, yielding a compensation rate of $224.72.
6. The issues for determination are:
(a). Whether plaintiff suffered a compensable injury by accident and/or specific traumatic incident to his back or spine;
(b). If so, to what benefits is he entitled.
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner with some modifications and finds as follows:
 FINDINGS OF FACT
1. On the date of the hearing before the Deputy Commissioner, plaintiff was thirty years old and was living in Augusta, Georgia.
2. Plaintiff initially was hired by Sams Club to work on the sales floor. At his request, when an opening came up, plaintiff was transferred to the tire shop, where he was working on November 20, 1998, the date of the injury. His duties included changing tires and installing batteries in vehicles.
3. At 5:30 p.m. on November 30, 1998. Plaintiff was having difficulty removing a tire from the rim. As he pulled up trying to remove the tire, he felt a tingle in his back. Plaintiff finished working since his shift ended at 6 p.m. and then left for home. As he was getting into his car to leave, plaintiff felt pain in his arms and shoulders and his back and right leg. He had difficulty sleeping that night due to his back pain.
4. Plaintiff went to work the next day and reported his injury from the previous day to Traci Regi, the personnel manager. Plaintiff told Ms. Regi he was concerned that he had hurt his neck and shoulder and they completed an associates statement for workers compensation. Ms. Regi then drove plaintiff to Western Wake Medical Center to be examined.
5. Plaintiff was seen at Western Wake by Dr. Joseph Williamson. The primary complaints noted at that time were pain in the right side of the neck and right shoulder. Dr. Williamsons assessment was a neck strain. He advised plaintiff to do no lifting for three days and referred plaintiff to Raleigh Orthopedic for any necessary follow-up.
6. Plaintiff went back to work on November 23, 1998 at which time he was assigned light duty, folding clothes. Plaintiff worked in this position for about 30 to 40 minutes, but was having back pain. He spoke with Curt Erickson, assistant store manager, and Mr. Erickson provided plaintiff a cushioned mat on which to stand. Despite use of the mat, plaintiffs back continued to bother him.
7. Plaintiff reported to work again on November 24, 1998, but advised Ms. Regi that his back was hurting and he had been unable to sleep. Ms. Regi sent him to Concentra Medical Center.
8. At Concentra, plaintiff reported that he had been lifting something at work and had pain in his neck area and lower back. Plaintiff was seen by Jack Halpin, PA-C, who assessed a back sprain and strain. He released plaintiff to work with the restrictions of no repetitive lifting over 10 pounds and no reaching above the shoulders. Plaintiff was given an appointment for follow-up on December 2, 1998. However, plaintiff did not keep the follow-up appointment, because on November 24, 1998, he received a letter notifying him that the carrier denied his workers compensation claim.
9. Plaintiff reported to work on November 25, 1998, when he was again assigned to fold clothes. Plaintiff was upset that his claim had been denied and was also unhappy about the assignment folding clothes. Standing on his feet for a long time caused pain in his lower back. Rather than begin work, plaintiff went to the break room and began making notes about his claim. He was in the break room when Ed Cunningham, the store manager, came in, and requested that plaintiff meet with him.
10. Plaintiff met for about twenty minutes with Mr. Cunningham, Curt Erickson, and Nancy Anderson, the general manager of the store. Plaintiff was frustrated over the denial of his claim and the light duty work assignment, which he felt he could not perform due to his back pain. Plaintiff told management he could not do the work and he wanted to go home to rest. Defendant-employers management took the position that since plaintiff was released to light duty by medical staff, he should be performing the assigned tasks, or produce a doctors note that he could not work. Following the meeting, plaintiff left work and went home.
11. Over the course of the next week to ten days, plaintiff reported to work a few more days. Due to his ongoing complaints, he was assigned to "write tickets for customers bringing vehicles into the tire shop. Although there was no lifting required, plaintiff was required to stand for long periods of time, and he had pain in his back running down his right leg. Plaintiff complained of this pain and at one point was given a stool for sitting.
12. Around December 2, 1998 plaintiff stopped going to work. On a few occasions, he called defendant-employer to report he would not be in, but other times he did not. Plaintiff was then considered terminated for his failure to report in or call in on three occasions.
13. Plaintiff sought treatment from a chiropractor, Dr. Joseph Hardee, and this gave him some relief. A cervical MRI was done on January 22, 1999 and a lumbar MRI was done on January 27, 1999. The results showed that plaintiff had a small paracentral herniated disk at C6-7 and a herniated disk at L5-S1.
14. Plaintiff then came under the care of Dr. James Lawrence Frank, an orthopedic surgeon, whom he first saw on March 11, 1999. After examining plaintiff and reviewing the MRI results, Dr. Frank began a course of conservative treatment, including epidural steroid injections. When conservative treatment was unsuccessful, Dr. Frank suggested surgery.
15. On April 30, 1999 Dr. Frank performed surgery, removing the herniated disk at L5-S1, and some bone. Since plaintiff had no medical insurance or workers compensation coverage, State Vocational Rehabilitation Services agreed to pay for the surgery. Dr. Frank saw plaintiff in follow-up on May 11, 1999, when plaintiff was having no radiation of pain. On June 1, 1999 Dr. Frank referred plaintiff for physical therapy, 3 times per week for 4 weeks.
16. Plaintiff was seen again by Dr. Frank on June 29, 1999 and July 29, 1999. At the last visit on July 29, 1999, Dr. Frank found no signs of pressure on the disk, and no indications of leg pain. Plaintiff had a good range of motion of his back and had only slight back pain and stiffness with changes in weather. Dr. Frank released plaintiff to return to work at maximum medical improvement and found that plaintiff had a 10% permanent functional impairment to his back. It is Dr. Franks opinion and the Commission finds that plaintiffs herniated lumbar disk was causally related to his lifting incident at work on November 20, 1998.
17. The greater weight of the evidence establishes that plaintiff sustained an injury by accident or specific traumatic incident on November 20, 1998, when he was performing work in the tire shop at defendant-employer. As a result, plaintiff sustained injury to his neck and lower back, including the herniated disk at L5-S1. There was no evidence of any prior or subsequent accident or incident which otherwise could have caused the neck and lower back injuries.
18. Following his accident, plaintiff had difficulty dealing with the management at defendant-employer. This was caused in part because plaintiff was upset that his compensation claim had been denied, and in part because of his difficulty dealing with his back pain.
19. Plaintiff has not been as candid as he should in disclosing past potential workers compensation injuries, as when he responded to discovery in this case. He has not always communicated well with his supervisors regarding his injury. Nevertheless, the undersigned find him credible with regard to the manner in which this injury occurred. The temporal relationship between the date of the accident and the discovery of the herniated disk at L5-S1, reinforced by Dr. Franks opinion, leads to the finding that the accident caused the injury.
20. As a result of his injury by accident of November 20, 1998, plaintiff was disabled and was unable to earn any wages in his usual employment or in the light duty offered by defendant from December 2, 1998 until July 29, 1999, when Dr. Frank released him to return to work. The evidence fails to establish that plaintiff has been unable to earn wages in any gainful employment since that time.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On November 20, 1998 plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer in that he sustained a specific traumatic incident of the work assignment. As a result, plaintiff sustained injury to his neck and lower back. N.C. Gen. Stat. 97-2(6).
2. As a result of plaintiffs compensable injury by accident, plaintiff was unable to earn wages in any employment and was totally disabled from December 2, 1998 through July 29, 1999, and is entitled to temporary total disability compensation at the rate of $224.72 per week during this period. N.C. Gen. Stat. 97-29.
3. As a result of the compensable injury by accident, plaintiff is entitled to 30 weeks of compensation at the rate of $224.72 per week for the 10% permanent functional impairment to his back. N.C. Gen. Stat.97-31(23).
4. Subject to the limitations of N.C. Gen. Stat. 97-25.1, plaintiff is entitled to have defendants provide all medical treatment arising from plaintiffs compensable injury to the extent it tends to effect a cure, provide relief, or lessen plaintiffs disability. N.C. Gen. Stat. 97-2(19),97-25.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff compensation at the rate of $224.72 per week from December 2, 1998 through July 29, 1999, as temporary total disability compensation, to be paid in a lump sum, subject to the attorneys fee.
2. Defendants shall pay plaintiff compensation at the rate of $224.72 per week beginning July 30, 1999 and continuing for 30 weeks as compensation for his 10% permanent functional impairment to his back, to be paid in a lump sum, subject to the attorneys fee.
3. Defendants shall pay all medical expenses incurred by plaintiff for reasonably necessary medical treatment of his back injury. Where those expenses have been covered by another provider such as State Vocational Rehabilitation Services, defendants shall be responsible for reimbursement.
4. A reasonable attorneys fee of 25% of the compensation awarded to plaintiff herein is approved for his counsel. This amount shall be deducted from the lump sum due plaintiff and paid directly to his counsel.
5. Defendants shall pay the costs.
This the ___ day of February 2001.
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/__________________ THOMAS J. BOLCH COMMISSIONER
 S/__________________ CHRISTOPHER SCOTT COMMISSIONER